**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| JANE DOE #9, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | Civil Action No. 4:19-cv-05016 |
| WYNDHAM HOTELS AND RESORTS, § | |
| INC., and LA QUINTA HOLDINGS INC., § | |
| § | |
| Defendants. § | |

**DEFENDANTS' MOTION TO DISMISS**

Defendant Wyndham Hotels & Resorts, Inc. ("WHRI"), incorrectly named as Wyndham Hotels and Resorts, Inc., and Defendant La Quinta Holdings Inc. ("LQH"), file this Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### I.   PRELIMINARY STATEMENT

Plaintiff asserts claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), Section 98.002 of the Texas Civil Practices & Remedies Code ("Chapter 98"), and for negligence, based on allegations that WHRI and LQH failed to prevent Jane Doe's trafficking at a La Quinta®-branded hotel in Houston in 2012 (the "Facility"). The Complaint lacks well-pled factual allegations sufficient to support any of these claims. In fact, the Complaint lacks well-pled allegations sufficient to support any element of a TVPRA claim or a Chapter 98 claim. The United States District Court for the Northern District of Georgia recently dismissed four cases involving similar claims and parties for failure to state a claim. *See, e.g.*, Minute Entry (Dkt. 242), *Jane Doe 1 v. Red Roof Inns, Inc., et al.*, 1:19-cv-03840-WMR (N.D. Ga. Feb. 7, 2020) ("The Court rules

the timely motions to dismiss filed by the franchis[o]rs [including WHRI] and argued today will be GRANTED . . . ."). This case should be dismissed as well.

## II.     STATEMENT OF PLAINTIFF'S ALLEGATIONS

Plaintiff's Original Complaint (the "Complaint") is based on conclusory allegations that Plaintiff was subjected to sex trafficking at some point in 2012 by unnamed traffickers at the Facility and that LQH's alleged failure to take steps to combat human trafficking led to Plaintiff's exploitation. *See* Dkt. 1, at ¶ 69. The Complaint further alleges that employees at the Facility "knew or should have known that Jane Doe was staying at their property and recognized unusual and suspect conduct surrounding her stay." *See* Dkt. 1, at ¶ 82. WHRI acquired the franchisor of the La Quinta® brand in 2018. The Complaint concludes that the ultimate "responsibility" for societal problem of human trafficking "should fall to" hotels, taking aim at the hospitality industry, generally, rather than the Facility, specifically. *See* Dkt. 1, at ¶¶ 5, 24-46.

## III.     LEGAL STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "A motion under [Rule 12(b)(6)] asks a court to dismiss a complaint for 'failure to state a claim upon which relief can be granted.'" *Ho v. Flotek Indus., Inc.*, 248 F. Supp. 3d 847, 854 (S.D. Tex. 2017) (Bennett, J.), *aff'd sub nom.*, 915 F.3d 975 (5th Cir. 2019) (quoting FED. R. CIV. P. 12(b)(6)). The plaintiff must plead facts sufficient to state a claim for relief that is facially plausible, not merely possible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The well-pled allegations in

the complaint must "provide plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Although well-pled factual allegations are taken as true and are construed in the plaintiff's favor, courts do not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Prause v. TechnipFMC, PLC*, 4:17-CV-02368, 2019 WL 1211428, at *2 (S.D. Tex. Jan. 18, 2019) (quoting *Cent. Laborers' Pension Fund v. Integrated Elec. Services Inc.*, 497 F.3d 546, 550 (5th Cir. 2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV. ARGUMENTS & AUTHORITIES

The Complaint asserts claims under the TVPRA and Chapter 98, along with negligence claims. The Complaint, however, lacks well-pled allegations sufficient to support a plausible inference that WHRI or LQH knowingly benefited from participating in a sex-trafficking venture. The Complaint, therefore, fails to state a claim under the TVPRA. Plaintiff's state law claims also lack sufficient well-pled factual allegations sufficient to withstand a motion to dismiss and are time-barred in any event given that the alleged incidents occurred more than seven years before the Complaint was filed. The Complaint should be dismissed.

### A. The Complaint Fails To State A Claim Under The TVPRA.

The TVPRA is a criminal statute that can give rise to civil claims for trafficking victims. *See* 18 U.S.C. §§ 1591(a), 1595(a). Section 1595 triggers civil liability for those who commit sex-trafficking crimes and defendants who "knowingly benefit[] . . . from participation in a venture" that commits sex-trafficking crimes and who knew or should have known that the venture was committing such crimes against the plaintiff. *See* 18 U.S.C. § 1595(a). The Complaint does not

3

make well-pled factual allegations sufficient to state a claim against WHRI or LQH under the TVPRA.

### 1. The Complaint lacks well-pled allegations sufficient to plausibly support that Plaintiff is a trafficking victim.

As a threshold matter, a plaintiff is only entitled to bring a claim under the TVPRA insofar as the plaintiff is the victim of a federal trafficking crime committed in violation of the TVPRA. *See* 18 U.S.C. § 1595(a) ("An individual who is a victim of a violation of this chapter may bring a civil action . . . ."). Section 1591(a) of the TVPRA, which criminalizes sex trafficking, makes it illegal for someone to:

> [K]nowingly . . . recruit[], entice[], harbor[], transport[], provide[], obtain[], advertise[], maintain[], patronize[], or solicit[] by any means a person . . . knowing, or, except where the act constituting a violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act . . . .

18 U.S.C. § 1591(a)(1). The Complaint, however, is based on conclusory allegations that Plaintiff's "traffickers committed a federal crime by trafficking [Plaintiff]," that Plaintiff was "trafficked at" the Facility, and that Plaintiff "is a victim within the meaning of 18 U.S.C. § 1595(a)." Dkt. 1, at ¶¶ 68, 72, 87. The Complaint, however, lacks (among other things) well-pled factual allegations stating that the alleged traffickers caused Plaintiff to engage in commercial sex acts through force, threats of force, fraud, or coercion—without which the TVPRA claim cannot withstand a motion to dismiss.

### 2. The Complaint lacks well-pled allegations that either WHRI or LQH participated in a sex-trafficking venture.

The TVPRA applies to multiple forms of trafficking, including sex trafficking. To state a standalone civil claim, a Plaintiff must plausibly allege that a defendant "participat[ed] in a venture." "Venture" is defined as "any group of two or more individuals associated in fact,

4

whether or not a legal entity." *Bistline v. Parker*, 918 F.3d 849, 873 (10th Cir. 2019) (quoting 18 U.S.C. § 1591(e)(6)). In the sex-trafficking context, the term "venture" means "a sex-trafficking venture" and only exists where "[t]wo or more people [] engage in sex trafficking together." *See United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016). "Participation" requires some "overt act" in furtherance of the trafficking; nonfeasance (i.e., the alleged failure to prevent trafficking) is not sufficient. *Id.* (holding that "participating in a venture" requires "some overt act," and that "mere negative acquiescence" is not enough); *accord Ratha v. Phatthana Seafood Co., Ltd.*, CV 16-4271-JFW (ASX), 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017). "In other words, some participation in the sex trafficking act itself must be shown." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018).

Participation in a venture also requires a common "purpose" among the participants. *See, e.g.*, *Bistline*, 918 F.3d at 874-75 (finding allegations sufficient to state a claim under the TVPRA where defendants "set up" a "scheme" that "was designed expressly ***for the purpose*** of facilitating [] crimes . . . ."); *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (finding allegations sufficient to state a claim against hotel operators under the TVPRA where they rented hotel rooms to a trafficker "for the purpose" of trafficking the plaintiff).[1] Courts routinely recognize that mere

---

[1] The definition of a TVPRA "venture" closely tracks the definition of "enterprise" in the Racketeer Influenced and Corrupt Organizations Act, as both require that participants be "associated in fact." *Compare* 18 U.S.C. § 1591(e)(6) (defining "venture" as "any group of two or more individuals ***associated in fact***, whether or not a legal entity" (emphasis added)) *with* 18 U.S.C. § 1961(4) (defining "enterprise" as "any . . . group of individuals ***associated in fact*** although not a legal entity" (emphasis added)). And, to be "associated in fact," persons must be "associated together for a ***common purpose*** of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981) (emphasis added); *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015). Where, as here, Congress uses similar language in two statutes, "it is appropriate [for courts] to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233 (2005); *Northcross v. Bd. of Ed. of Memphis City Sch.*, 412 U.S. 427, 428 (1973) ("The similarity of language in [two statutes] is, of course, a strong indication that the two statutes should be interpreted pari passu."). The Supreme

5

business transactions (e.g., loans, the sale of goods, or—in this case—the rental of a hotel room, etc.) without more do not give rise to a reasonable inference that the participants in such transactions shared any common purpose. *See, e.g.*, *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352 (11th Cir. 2016) ("The second amended complaint fails because it has not plausibly alleged that the technology [] and public relations [] vendors named in the complaint shared a common purpose with Spirit.").[2] Indeed, a defendant's lawful association with someone who commits sex-

---

Court has long recognized that, for persons to be "associated in fact" and thus constitute an "enterprise" under RICO, they must be "associated together for a **common purpose**." *United States v. Turkette*, 452 U.S. 576, 583 (1981) (emphasis added). It therefore follows that, in determining whether a defendant has "associated in fact" with others for purposes of participating in a TVPRA "venture," the inquiry depends in part on whether the alleged participants of the venture associated together for a "common purpose." *See Plaintiff A v. Schair*, 2:11-CV-00145-WCO, 2014 WL 12495639, at *2 (N.D. Ga. Sept. 9, 2014) ("The TVPA's civil remedy operates in the same manner as the federal Racketeer Influenced and Corrupt Organizations Act []."); *Boyle v. United States*, 556 U.S. 938, 944 (2009) ("That an '*enterprise*' must have a purpose is apparent from the meaning of the term in ordinary usage, *i.e.*, a '*venture*,' 'undertaking,' or 'project.' The concept of 'association' requires both interpersonal relationships and a common interest." (internal citations omitted) (emphasis added)).

[2] *See also, e.g.*, *Cirino v. Bank of Am., N.A.*, CV 13-8829 PSG MRWX, 2015 WL 3669078, at *4 (C.D. Cal. Feb. 10, 2015) (finding allegations that vendors were used as "instrumentalities" to carry out an alleged RICO enterprise were insufficient to show the vendors themselves shared in a common purpose with the alleged enterprise); *Weir v. Cenlar FSB*, 16-CV-8650 (CS), 2018 WL 3443173, at *6 (S.D.N.Y. July 17, 2018) ("[B]eing an 'instrumentality' does not thereby mean one shares a common purpose. Defendants allegedly used the mail in furtherance of the scheme, but that would not make the Postal Service [] a member of the enterprise."); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428-29 (S.D.N.Y. 2007) ("The only factual allegation supporting this claim is that BoC provided 'indispensable banking services' to IFS and Siu Lap. The fact that BoC provided general professional services to IFS and Siu Lap, services that BoC provides to the public at large, does not provide a basis for inferring that BoC, IFS, and Siu Lap shared a common unlawful purpose."); *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 2:11-CV-07166-MRP, 2012 WL 10731957, at *9 (C.D. Cal. June 29, 2012) ("At the risk of being glib, this allegation amounts to one that 'Countrywide offered to buy something, and the lenders obliged.' Western and Southern [have] identified exactly the type of arms-length business transaction, with each party pursuing its own economic interests, that does not constitute a RICO enterprise."); *Peters v. Aetna, Inc.*, 1:15-CV-00109-MR, 2016 WL 4547151, at *9 (W.D.N.C. Aug. 31, 2016) ("Without an indication that the cooperation in this case exceed that inherent in every commercial transaction, the Complaint provides no basis for inferring that the Defendants were conducting the

trafficking crimes is insufficient to show that the defendant itself "participat[ed]" in a sex-trafficking venture. *Afyare*, 632 F. App'x at 286; *Noble*, 335 F. Supp. 3d at 524 ("In other words, some participation in the sex trafficking act itself must be shown."). Construing the phrase "participation in a venture" otherwise would "create a vehicle to ensnare conduct that the statute never contemplated." *Afyare*, 632 F. App'x at 286.

The Complaint suggests that the occurrence of sex trafficking on the premises of a hotel is sufficient to plausibly allege that the hotel itself participated in a sex-trafficking venture. It is not. Absent well-pled factual allegations supporting a plausible inference that WHRI or LQH shared a common purpose with the unidentified trafficker and that WHRI or LQH took overt, affirmative steps in furtherance of the trafficking venture, the Complaint does not plausibly allege a claim under the TVPRA. *See, e.g.*, *Bistline*, 918 F.3d at 874-75; *Ricchio*, 853 F.3d at 556. The Complaint lacks any such allegations. WHRI and LQH's alleged failure to prevent Plaintiff's trafficking is insufficient to establish "participation in a venture" under the TVPRA. *See Afyare*, 632 F. App'x at 286. The TVPRA claim should be dismissed.

### 3. The Complaint lacks well-plead allegations that either WHRI or LQH benefited, knowingly or otherwise, from Plaintiff's alleged trafficking.

In determining whether a defendant "knowingly benefited" under the TVPRA, the "controlling question is whether [the alleged trafficker] provided any benefits to [the defendant] *because of* [the defendant's alleged] facilitation of [] sexual misconduct." *See, e.g.*, *Geiss v. Weinstein Co. Holdings, LLC*, 383 F. Supp. 3d 156, 169-70 (S.D.N.Y. 2019) (emphasis in original). Benefits that do not stem directly from the alleged sex trafficking itself, and are not

---

enterprise's affairs and not their own, independent interests." (internal quotations and alterations omitted)).

received in exchange for participating in the alleged trafficking venture, are not sufficient. *See id.* ("In other words, there must be a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual or, in the civil context, constructive knowledge of that causal relationship.").

In this case, the Complaint alleges that the Facility received "hotel rental fees." *See* Dkt. 1, at ¶ 84. That is insufficient. As alleged in the Complaint, the Facility benefited, if at all, from the rental of hotel rooms generally—not from Plaintiff's trafficking. Moreover, where, as here, there are no well-pled allegations that the defendant participated in a sex-trafficking venture, a defendant could not have knowingly benefited "from" participating in that venture. Because the Complaint lacks well-pled allegations that either WHRI or LQH benefited from participating in a sex-trafficking venture (let alone knowingly benefited), the TVPRA claim should be dismissed. *See, e.g.*, *Kolbek v. Twenty First Cent. Holiness Tabernacle Church, Inc.*, No. 10 Civ. 4124, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013) ("Nor have Plaintiffs offered evidence to show that Defendants were compensated 'on account of' the sex acts. . . . The fact that sexual abuse was committed by the ministry's leader and that members of the ministry had their expenses paid for through ministry funds is simply not sufficient . . . .").

### 4. The Complaint does not include plausible allegations that either WHRI or LQF knew or should have known about Plaintiff's trafficking.

In addition, to state a claim under the TVPRA, a plaintiff must make well-pled factual allegations plausibly suggesting that the defendant knew or should have known that the venture was committing trafficking crimes against the plaintiff. 18 U.S.C. § 1595(a). In other words, the Complaint (among other things) must allege facts plausibly suggesting that the defendant knew or should have known that the plaintiff was forced or coerced to commit commercial sex acts against

8

her will. 18 U.S.C. §§ 1591(a), 1595(a). Allegations about commercial sex activity, generally, are insufficient.

The Complaint alleges that employees "knew or should have known" of Plaintiff's trafficking. *See* Dkt. 1, at ¶ 82. From there, the Complaint speculates "on information and belief" that signs of human trafficking may have been present at the Facility. *See* Dkt. 1, at ¶ 83. Boilerplate, speculative allegations like these are insufficient to support a TVPRA claim. *See, e.g.*, *Kelsey v. Goldstar Estate Buyers Corp.*, 3:13-CV-00354-HU, 2014 WL 1155253, at *6 (D. Or. Mar. 21, 2014) (dismissing TVPRA claim where the complaint "regurgitate[ed]" the statute's language "woven together with conclusory statements and a generous use of 'and/or'"). Insofar as the Complaint implies that WHRI or LQH "should have known" about Plaintiff's alleged trafficking simply because the hospitality industry generally is aware that commercial sex activity sometimes occurs at hotels, *see* Dkt. 1, at ¶¶ 24-46, such allegations also are insufficient. *See, e.g.*, *Ratha*, 2017 WL 8293174, at *4 ("Plaintiffs argue that Rubicon and Wales knew or should have known that Phatthana allegedly engaged in [trafficking] based on general reports about human trafficking in Thailand and letters by advocacy groups . . . criticizing the working conditions at Phatthana's Songkhla factory. . . . Plaintiffs have failed to demonstrate that Rubicon or Wales knew or should have known that human trafficking existed at Phatthana's Songkhla factory.").

The Complaint also alleges in passing that "La Quinta turned a blind eye" to trafficking. *See* Dkt. 1, at ¶ 69. Again, however, such a conclusory allegation is insufficient. The Complaint does not allege facts that support a plausible inference that (i) WHRI or LQH subjectively believed there was a high probability that Plaintiff was being trafficked, or (ii) WHRI or LQH took deliberate steps to avoid confirming that Plaintiff was being trafficked. *See, e.g.*, *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) (holding that "willful blindness" has "two

9

basic requirements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact"). There simply are no well-pled factual allegations that could support a plausible inference that WHRI or LQH knew or should have known that alleged traffickers had caused Plaintiff through force, fraud, or coercion to engage in commercial sex acts against her will. *See, e.g.*, *Lawson v. Rubin*, 17-CV-6404 (BMC), 2018 WL 2012869, at *14 (E.D.N.Y. Apr. 29, 2018), *reconsideration denied*, 2018 WL 7958928 (E.D.N.Y. June 11, 2018) (dismissing TVPRA claim against owner of condominium complex, reasoning that two incidents involving first responders were insufficient to give rise to a reasonable inference that the owner knew or should have known that the occupant of the penthouse was committing trafficking crimes).

Lacking any well-pled allegation that WHRI or LQH knew or should have known that Plaintiff was being trafficked, the Complaint fails to state a claim under the TVPRA. Two decisions from the Southern District of Ohio do not change this result. In denying motions to dismiss in those cases, the Ohio court improperly applied the pre-*Twombly* dismissal standard, stating that "[t]he Court cannot dismiss a complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *M.A. v. Wyndham Hotels & Resorts, Inc.,* 2:19-CV-849, 2019 WL 4929297, at *1 (S.D. Ohio Oct. 7, 2019) (Marbley, J.) (quoting *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)); *H.H. v. G6 Hospitality, LLC*, 2:19-CV-755, 2019 WL 6682152, at *1 (S.D. Ohio Dec. 6, 2019) (Marbley, J.). From there, the Ohio court incorrectly found that the rental of a hotel room by itself was sufficient to satisfy both the "participation in a venture" and "knowingly benefits"

10

elements. The court ultimately denied the motions to dismiss even though there were no well-pled allegations supporting a TVPRA claim against the defendants.[3]

In short, the *M.A.* and *H.H.* cases were both wrongly decided, and the Court should not follow them here. The TVPRA claim in this case, like those in the cases in the Northern District of Georgia, should be dismissed.

### B. The Complaint Fails To State A Claim Under Chapter 98.

No reported Texas decisions have construed the substance of Chapter 98. *Cf. Doe #4 v. Salesforce.com, Inc.*, 389 F. Supp. 3d 473, 477 (S.D. Tex. 2019) (discussing Tex. Civ. Prac. & Rem. Code § 98.002 in context of removal to federal court). Where, however, a Texas statute uses language that is analogous to a federal statute, Texas courts use comparable federal law as guidance, especially when the Texas statute was enacted *after* the federal statute. *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 68 (Tex. 2019) ("Cognizant of the fact that the Legislature enacted some of the discrimination standards in section 121.003 *after* Congress enacted the ADA, and that the purpose of the THRC aligns with the ADA's purpose, we find the ADA and the case law interpreting it helpful in analyzing the circumstances under which a public facility may lawfully discriminate by depriving a person with a disability of full use and enjoyment of the facility." (emphasis in original)); *accord Monsivais v. Arbitron, Inc.*, 44 F. Supp. 3d 702, 707 (S.D. Tex. 2014).

---

[3] Moreover, the allegations in the Complaint do not rise to the same level as those in *H.H.* and *M.A.*, making those decisions further distinguishable. The Complaint does not allege that anyone at the Facility witnessed anything that could plausibly support an inference that they knew or should have known that Plaintiff was committing commercial sex acts against her will as a result of force, fraud, or coercion.

11

The TVPRA was amended in 2008 to provide a civil remedy against those who "knowingly benefit[] . . . from participation in a venture" that commits sex-trafficking crimes in violation of the TVPRA (i.e., a sex-trafficking venture). *See* Pub. L. 110–457, Title II, § 221(2), Dec. 23, 2008, 122 Stat. 5067. Within only months, the Texas legislature enacted TEX. CIV. PRAC. & REM. CODE § 98.002, which provides a civil remedy for trafficking victims under Texas law. *See* 2009 Tex. Sess. Law Serv. Ch. 309, § 1 (H.B. 533). Like the TVPRA, Chapter 98 only gives rise to liability where a defendant knowingly benefits from participating in a sex-trafficking venture that commits trafficking crimes against the plaintiff. TEX. CIV. PRAC. & REM. CODE § 98.002. Accordingly, Chapter 98 claim should be dismissed for the same reasons that the TVPRA claim should be dismissed.

  **C.** **Plaintiff's State Law Claims, Including The Chapter 98 Claim, Are Time-Barred.**

Under Texas law, "[a] person must bring suit for personal injury not later than five years after the day the cause of action accrues if the injury arises as a result of conduct that violates . . . Section 20A.02, Penal Code (trafficking of persons) . . . ; or [] Section 43.05(a)(1), Penal Code (compelling prostitution)." TEX. CIV. PRAC. & REM. CODE § 16.0045(b). Claims brought under Chapter 98 are expressly predicated on violations of Chapter 20A of the Texas Penal Code. *See* TEX. CIV. PRAC. & REM. CODE § 98.001 ("In this chapter, 'trafficking of persons' means conduct that constitutes an offense under Chapter 20A, Penal Code."). Plaintiff's other state law claims arise from the same set of underlying facts.

Plaintiff alleges that she was trafficked in 2012 for an unspecified period of time. As explained above, the Complaint lacks well-pled factual allegations that Plaintiff is in fact a trafficking victim. Even assuming *arguendo* that the Complaint did contain such allegations,

12

Plaintiff's state law claims became time-barred no later than 2017—at least two years before the filing of this lawsuit.

### D. The Complaint Fails To State Claims For Negligence Or Gross Negligence.

The Complaint asserts claims for negligence and gross negligence on a premises liability theory, as opposed to a negligent activity theory. *See* Dkt. 1, at ¶¶ 101-11, 117-23; *Austin v. Kroger Texas L.P.*, 746 F.3d 191, 197 (5th Cir. 2014), *certified question answered*, 465 S.W.3d 193 (Tex. 2015). Under Texas law, "a person has no legal duty to protect another from the criminal acts of a third person," except in rare circumstances. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). For premises operators, "[a] duty only exists when the risk of criminal conduct is so great that it is both unreasonable and foreseeable." *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998) (internal quotations and alterations omitted).

"[T]o foresee criminal conduct on property, there must be evidence that other crimes have occurred on the property or in its immediate vicinity." *Id.* at 757. Evidence of crimes at similar types of properties is immaterial unless such properties are in the immediate vicinity. *Id.* ("[M]erely because several crimes have occurred at a particular ATM located in a high-crime area does not render it more likely that future crimes will occur at every ATM the bank owns."). If other crimes have been committed in the immediate vicinity of the property in question, the "recency, frequency, similarity, and publicity" of those crimes become relevant in determining whether the premises owner owed a duty. *Id.* at 759. "[U]nreported criminal activity," even if it occurs "on the premises" in question, "is no evidence of foreseeability." *Id.* at 758-59. Though the Complaint alleges that Plaintiff is a victim of trafficking crimes, it does not make well-pled factual allegations that could plausibly support such an inference. *See* Dkt. 1, at ¶¶ 87-88. The Complaint also lacks any allegations of other crimes committed on the premises or in the

immediate vicinity of the Facility. Moreover, even if the Complaint adequately alleged a duty, the conclusory laundry list of alleged breaches in the Complaint does not satisfy federal pleading standards. *See* Dkt. 1, at ¶ 109.

The Complaint does not support a plausible inference that the operator of the Facility can be held liable under a premises liability theory for the criminal conduct of others, let alone a plausible inference that would support a finding of gross negligence. *See Madrid v. Galp Waters Ltd. P'ship*, CV H-12-3252, 2014 WL 12539253, at *3 (S.D. Tex. June 6, 2014) ("A plaintiff who cannot support a cause of action for negligence cannot succeed on gross negligence because a finding of ordinary negligence is a prerequisite to a finding of gross negligence." (internal quotations omitted)); TEX. CIV. PRAC. & REM. CODE § 41.003(a)(3); *Kent v. Wal-Mart Stores Texas, LLC*, 3:17-CV-211, 2018 WL 953348, at *3 (S.D. Tex. Feb. 20, 2018) (dismissing count for "gross negligence" where the complaint lacked well-pled factual allegations sufficient to plausibly satisfy the requirements of Section 41.003(a)(3) of the Texas Civil Practices & Remedies Code). The negligence and gross negligence causes of action, even if they were not time-barred, should be dismissed.

### E. The Complaint Fails To State A Claim For Negligence Per Se.

The Complaint contends that WHRI and LQH's alleged violations of the TVPRA and Chapter 98 (which themselves have not been adequately pled) give rise to an independent cause of action for negligence *per se*. *See* Dkt. 1, at ¶¶ 113-15. Negligence *per se*, however, is not an independent cause of action. *See, e.g.*, *Thomas v. Uzoka*, 290 S.W.3d 437, 445 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). "It is instead, a method of proving a breach of a duty," invoking statutes to define what a reasonably-prudent person would or would not do. *Durham v. Accardi*, 587 S.W.3d 179, 183 (Tex. App.—Houston [14th Dist.] 2019, no pet.). The negligence

*per se* doctrine does not apply where the negligence claim sounds in premises liability. *See, e.g.*, *Padron v. Catholic Diocese of Austin*, 06-18-00087-CV, 2019 WL 1548637, at *7 (Tex. App.—Texarkana Apr. 10, 2019, no pet.) ("Pardon could not creatively transform her premises defect claim into a negligence per se claim."); *Brinker v. Evans*, 370 S.W.3d 416, 422 (Tex. App.—Amarillo 2012, pet. denied) ("[T]he Brinkers' claim against Evans sounded in premises liability. Claims of negligence and negligence per se were not mechanisms through which they could have recovered.").

Because there is no such thing as an independent claim for negligence *per se*, this cause of action should be dismissed. *Durham*, 587 S.W.3d at 183. Moreover, because the Complaint's negligence claim sounds in premises liability, negligence *per se* is not a viable basis for establishing breach of any duty. *See Padron*, 2019 WL 1548637, at *7. Even if it were, the circumstances do not warrant what would be an unprecedented application of the negligence *per se* doctrine to alleged violations of the TVPRA or Chapter 98, which themselves already provide civil remedies. *See, e.g.*, *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex. 1998) (setting forth factors that courts consider in determining whether the doctrine of negligence *per se* applies). And, even if there were a basis for applying the negligence *per se* doctrine to violations of the TVPRA or Chapter 98, the Complaint has not alleged facts plausibly supporting a claim under either statute.

## V.    CONCLUSION

For the foregoing reasons, WHRI and LQH respectfully request that the Court GRANT this Motion and dismiss the Complaint with prejudice.

Dated:  February 24, 2020			Respectfully submitted,

				**DLA PIPER LLP (US)**


By:	/s/  Allissa A.R. Pollard
	Allissa A.R. Pollard
	*Attorney-in-Charge*
	S.D. Tex. Bar No.:  982820
	Tex. Bar No.:  24065915
	1000 Louisiana Street, Suite 2800
	Houston, Texas 77002
	T:  713.425.8400
	F:  713.425.8401
	alllissa.pollard@dlapiper.com

*Of Counsel*:

David S. Sager (*pro hac vice* forthcoming)
51 John F. Kennedy Pkwy, Suite 120
Short Hills, New Jersey 07078
T:  973.520.2570
F:  973.215.2604
david.sager@dlapiper.com

– and –

Christopher B. Donovan
S.D. Tex. Bar No.:  3120082
Tex. Bar No.:  24097614
1000 Louisiana Street, Suite 2800
Houston, Texas 77002
T:  713.425.8400
F:  713.425.8401			*Counsel for Defendants Wyndham Hotels &*
christopher.b.donovan@dlapiper.com	*Resorts, Inc. and La Quinta Holdings Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that on the 24th day of February 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notice of such filing to all attorneys of record.

                                         /s/ Christopher B. Donovan
                                         Christopher B. Donovan
                                         S.D. Tex. Bar No.: 3120082
                                         Tex. Bar No.: 24097614