IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JANE DOE #9, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| WYNDHAM HOTELS AND RESORTS, | § Civil Action No. 4:19-cv-05016 |
| INC., LA QUINTA HOLDINGS INC., and | § |
| CPLG TX PROPERTIES L.L.C. | § |
| | § |
| Defendants. | § |

**DEFENDANTS' MOTION TO DISMISS &
MOTION TO STRIKE PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants Wyndham Hotels & Resorts, Inc. ("WHRI"), incorrectly named as Wyndham Hotels and Resorts, Inc., La Quinta Holdings Inc. ("LQH"), and CPLG TX Properties L.L.C. ("CPLG TX") (collectively, "Defendants") file this Motion to Dismiss and Motion to Strike the Second Amended Complaint (Dkt. 25) under Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure.

## I.  PRELIMINARY STATEMENT

The Second Amended Complaint ("Complaint") asserts a single claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA") based on allegations that Defendants collectively failed to prevent Plaintiff's trafficking in 2012 at a La Quinta®-branded hotel in Houston (the "Facility"). The Complaint should be dismissed because it lacks well-pled factual allegations sufficient to support a TVPRA claim against any of the Defendants. In particular, the Complaint lacks well-pled factual allegations that any of the Defendants participated in a venture that committed sex-trafficking crimes, knowingly benefited from any such

participation, or knew or should have known that the venture was committing sex-trafficking crimes. 18 U.S.C. § 1595(a). The United States District Court for the Northern District of Georgia recently dismissed four cases involving similar claims and parties for failure to state a claim. *See, e.g.*, *Doe 1 v. Red Roof Inns, Inc.*, 1:19-CV-03840-WMR, 2020 WL 1872335 (N.D. Ga. Apr. 13, 2020).[1] This case should be dismissed as well.

## II. BACKGROUND & SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff's TVPRA claim is based on conclusory allegations that Plaintiff was subjected to sex trafficking at the Facility at some point in 2012 and that Defendants collectively failed to prevent (as opposed to participated in) Plaintiff's exploitation. *See* Dkt. 25, at ¶¶ 89, 95, 100.[2] The Complaint alleges that Defendants collectively "owned, operated, controlled, and managed" the Facility, and that employees "knew or should have known that Jane Doe was staying at their property and recognized unusual and suspect conduct surrounding her stay." *See* Dkt. 25, at ¶¶ 17, 21, 25, 103. The Complaint further alleges "upon information and belief" that "signs of sex trafficking" were present at the Facility, Dkt. 25, at ¶ 104, and that the alleged trafficker "caused Jane Doe to engage in commercial sex acts through force, fraud, or coercion," but otherwise lacks any factual allegations regarding the alleged trafficking. *See* Dkt. 25, at ¶ 88. At times, the Complaint refers to a single, unnamed trafficker, and elsewhere it refers to multiple traffickers.

---

[1] *See also Doe 2 v. Red Roof Inns, Inc.,* 1:19-CV-03841-WMR, 2020 WL 1872337 (N.D. Ga. Apr. 13, 2020); *Doe 3 v. Red Roof Inns, Inc.,* 1:19-CV-03843-WMR, 2020 WL 1872333 (N.D. Ga. Apr. 13, 2020); *Doe 4 v. Red Roof Inns, Inc.,* 1:19-CV-03845-WMR, 2020 WL 1872336 (N.D. Ga. Apr. 13, 2020).

[2] Plaintiff's Original Complaint asserted claims under the TVPRA and Section 98.002 of the Texas Civil Practices & Remedies Code, along with negligence-based claims (*e.g.*, premises liability). *See* Dkt. 1, at ¶¶ 86-123. WHRI and LQH moved to dismiss each of those claims. *See* Dkt. 13. Plaintiff subsequently amended the complaint twice, dropping all but the TVPRA claim and adding CPLG TX as a defendant. *See* Dkts. 20, 25.

*Compare* Dkt. 25, at ¶¶ 77-84, *with* ¶¶ 117-118. There are vague allegations that Defendants "participated in a venture with, among others, Jane Doe's traffickers," and that "[e]ach of the venturers shared a common purpose—the rental of hotel rooms," and that Defendants "received a direct financial benefit of the hotel rental fees." Dkt. 25, at ¶¶ 117, 120.

The fundamental flaw in the Complaint arises from its attempt to find TVRPA liability based on the conclusory assertion that ultimate "responsibility" for the societal problem of human trafficking "should fall to" hotels, taking aim at the hospitality industry, generally, rather than the Facility, specifically. *See* Dkt. 25, at ¶¶ 5, 28-50. The Complaint also gratuitously lists online articles and reviews concerning suspected commercial sex activity at various hotels not at issue in this lawsuit, arguing that Defendants (like the hotel industry generally) are generally aware that hotels are sometimes used for illicit purposes. Dkt. 25, at ¶¶ 59. Such assertions are legally irrelevant. Absent specific allegations tying a particular defendant to a particular trafficker and victim—i.e., absent allegations of a defendant's knowing benefit from and participation in a sex trafficking venture—there is no basis to state a claim under the TVPRA, and Plaintiff's Complaint should be dismissed.

### III. LEGAL STANDARD

#### A. Rule 12(b)(6): Motion to Dismiss

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) "asks a court to dismiss a complaint for 'failure to state a claim upon which relief can be granted.'" *Ho v. Flotek Indus., Inc.*, 248 F. Supp. 3d 847, 854 (S.D. Tex. 2017) (Bennett, J.), *aff'd sub nom.*, 915 F.3d 975 (5th Cir. 2019) (quoting FED. R. CIV.

P. 12(b)(6)). The plaintiff must plead facts sufficient to state a claim for relief that is facially plausible, not merely possible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The well-pled allegations in the complaint must "provide plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Although well-pled factual allegations are taken as true and are construed in the plaintiff's favor, courts do not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Prause v. TechnipFMC, PLC*, 4:17-CV-02368, 2019 WL 1211428, at *2 (S.D. Tex. Jan. 18, 2019) (quoting *Cent. Laborers' Pension Fund v. Integrated Elec. Services Inc.*, 497 F.3d 546, 550 (5th Cir. 2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

B.   Rule 12(f):  Motion to Strike

Under Rule 12(f), a district court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous material." FED. R. CIV. P. 12(f). A district court has "ample discretion" to strike such material from a complaint. *See, e.g.*, *Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 707 (S.D. Tex. 2011) (quoting *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1168 (5th Cir. 1979)). "Immateriality is established by showing that the challenged allegations 'can have no possible bearing upon the subject matter of the litigation.'" *Hi-Tech Elec., Inc. of Delaware v. T&B Constr. & Elec. Services, Inc.*, CV 15-3034,

2017 WL 660645, at *1 (E.D. La. Feb. 15, 2017) (quoting *Bayou Fleet P'ship, LLC v. St. Charles Par.*, CIV.A. 10-1557, 2011 WL 2680686, at *5 (E.D. La. July 8, 2011)).

## IV. ARGUMENTS & AUTHORITIES

Despite having multiple opportunities and ample time to refine the Complaint, Plaintiff still has not made well-pled factual allegations supporting a plausible inference that WHRI, LQH, or CPLG TX are liable under the TVPRA. The Complaint lacks well-pled factual allegations sufficient to support a plausible inference that Defendants knowingly benefited from participating in a sex-trafficking venture, or that Defendants knew or should have known that any such venture was causing Plaintiff to engage in commercial sex against her will. The Complaint, therefore, fails to state a claim under the TVPRA and should be dismissed.

### A. The Complaint Should Be Dismissed As An Impermissible "Shotgun" Pleading.

A complaint that makes "shotgun" allegations indiscriminately against a group of defendants violates Rule 8 of the Federal Rule of Civil Procedure; such allegations should be disregarded when assessing the sufficiency of a complaint's allegations. *See, e.g.*, *Del Castillo v. PMI Holdings N. Am. Inc.*, 4:14-CV-3435, 2015 WL 3833447, at *6 (S.D. Tex. June 22, 2015) ("At a minimum, Plaintiffs should endeavor to explain what role each Defendant played . . . rather than grouping them together at all times."); *Woolum v. City of Dallas, Tex.*, 3:18-CV-2453-B-BN, 2019 WL 2604125, at *5 (N.D. Tex. May 24, 2019), *report and recommendation adopted*, 3:18-CV-2453-B-BN, 2019 WL 2601822 (N.D. Tex. June 25, 2019) (explaining that where a "complaint uses blanket terms covering all the defendants, by lumping them together . . . these allegations are properly disregarded" for purpose of a motion to dismiss (internal citations omitted)); *Joseph v. Bernstein*, 612 F. App'x 551, 553 (11th Cir. 2015) ("[T]he complaint failed

to satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure because it indiscriminately grouped all Defendants together without explaining the factual basis for each of the Defendants' liability.").

With the exception of certain jurisdictional allegations (Dkt. 25, at ¶¶ 16-27), the Complaint collectively defines all Defendants as "La Quinta" as though they are a single entity—even though, for instance, CPLG TX does not even share common corporate ownership with WHRI or LQH. The Complaint proceeds to make allegations against "La Quinta" generally without ever differentiating the Defendants. The Complaint's use of "shotgun" pleading has the effect of masking unviable theories of relief, and depriving individual defendants of the notice they are entitled under the Federal Rules. *See, e.g.*, *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (explaining that "shotgun" pleadings are utilized to "confuse the 'enemy,' and the court, so that theories for relief not provided by law . . . can be masked").

If Plaintiff has a good-faith basis for asserting a claim against any of the Defendants, Plaintiff is required to make well-pled factual allegations specific to each Defendant that could plausibly support each element of each claim asserted, but the Complaint makes no effort to do that here. Because the Complaint impermissibly relies on "shotgun" pleading, it should be dismissed.

**B.    The Complaint Fails To State A Claim Under The TVPRA.**

The TVPRA is a criminal statute that can give rise to civil claims for trafficking victims. *See* 18 U.S.C. §§ 1591(a), 1595(a). Section 1595 gives rise to a civil claim by a "victim of a violation" of the TVPRA against "the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) . . . ." *See* 18 U.S.C. § 1595(a).

Even setting aside the "shotgun" pleading deficiencies in the Complaint, Plaintiff still fails to state a claim against the Defendants under the TVPRA.

### 1. The Complaint lacks well-pled allegations sufficient to plausibly support that Plaintiff is a trafficking victim.

As a threshold matter, a plaintiff is only entitled to bring a claim under the TVPRA insofar as the plaintiff is the victim of a federal trafficking crime committed in violation of the TVPRA. *See* 18 U.S.C. § 1595(a) ("An individual who is a victim of a violation of this chapter may bring a civil action . . . ."). Section 1591(a) of the TVPRA, which criminalizes sex trafficking, makes it illegal for someone to:

> [K]nowingly . . . recruit[], entice[], harbor[], transport[], provide[], obtain[], advertise[], maintain[], patronize[], or solicit[] by any means a person . . . knowing, or, except where the act constituting a violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act . . . .

18 U.S.C. § 1591(a)(1).[3] The Complaint, however, asserts only conclusory allegations that Plaintiff's alleged trafficker(s) "committed a federal crime by trafficking" Plaintiff, that Plaintiff was "trafficked at" the Facility, and that Plaintiff "is a victim within the meaning of 18 U.S.C. § 1595(a)." Dkt. 25, at ¶¶ 80, 92, 113.

Here, the Complaint lacks (among other things) well-pled factual allegations sufficient to support an inference that someone caused Plaintiff to engage in commercial sex acts against her will through force, threats of force, fraud, or coercion. In fact, the Complaint does not even clearly

---

[3] 18 U.S.C. § 1591(e)(2) ("The term 'coercion' means – (A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (C) the abuse or threatened abuse of law or the legal process.").

7

indicate whether there was one trafficker or multiple. Containing only vague, conclusory, boilerplate allegations on this threshold issue, the Complaint should be dismissed. *See, e.g.*, *Kelsey v. Goldstar Estate Buyers Corp.*, 3:13-CV-00354-HU, 2014 WL 1155253, at *6 (D. Or. Mar. 21, 2014) (dismissing TVPRA claim where the complaint "regurgitate[ed]" the statute's language "woven together with conclusory statements and a generous use of 'and/or'").

### 2. The Complaint lacks well-pled allegations that Defendants participated in a sex-trafficking venture.

The TVPRA applies to multiple forms of trafficking, including sex trafficking. To state a civil TVPRA claim, a Plaintiff must plausibly allege that a defendant participated in a venture. 18 U.S.C. § 1595(a). "Venture" is defined as "any group of two or more individuals associated in fact, whether or not a legal entity." *Bistline v. Parker*, 918 F.3d 849, 873 (10th Cir. 2019) (quoting 18 U.S.C. § 1591(e)(6)); *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (recognizing that a "venture" only exists for purposes of Section 1595(a) where "two or more individuals" are "associated in fact").

The definition of a TVPRA "venture" closely tracks the definition of "enterprise" in the Racketeer Influenced and Corrupt Organizations Act, as both require that participants be "associated in fact." *Compare* 18 U.S.C. § 1591(e)(6) (defining "venture" as "any group of two or more individuals ***associated in fact***, whether or not a legal entity" (emphasis added)) with 18 U.S.C. § 1961(4) (defining "enterprise" as "any . . . group of individuals ***associated in fact*** although not a legal entity" (emphasis added)). Where, as here, Congress uses similar language in two statutes, it is appropriate for courts to presume that "Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233 (2005); *Northcross v. Bd. of Ed. of Memphis City Sch.*, 412 U.S. 427, 428 (1973). And, in the RICO

context, the Fifth Circuit Court of Appeals and the Supreme Court have long recognized that association in fact requires three "indispensable" features: (i) a common purpose; (ii) "relationships" among the associates; and (iii) "longevity sufficient to permit these associates to pursue" the common purpose. *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673-74 (5th Cir. 2015) (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)); *United States v. Turkette*, 452 U.S. 576, 583 (1981).

Accordingly, whether a defendant has "associated in fact" with others for purposes of participating in a TVPRA "venture" depends in part on whether: (i) the alleged participants of the venture associated together for a common purpose; (ii) there were relationships among the alleged participants; and (iii) the alleged participants associated long enough to pursue their common purpose. *See Plaintiff A v. Schair*, 2:11-CV-00145-WCO, 2014 WL 12495639, at *2 (N.D. Ga. Sept. 9, 2014) ("The TVPA's civil remedy operates in the same manner as the federal Racketeer Influenced and Corrupt Organizations Act . . . ."); *Boyle*, 556 U.S. at 944 ("That an '**enterprise**' must have a purpose is apparent from the meaning of the term in ordinary usage, *i.e.*, a '**venture**,' 'undertaking,' or 'project.' The concept of 'association' requires both interpersonal relationships and a common interest." (internal citations omitted) (emphasis added)).

A commercial transaction (e.g., a person's rental of a hotel room) does not give rise to a reasonable inference that the participants in such a transaction shared any common purpose or otherwise "associated in fact." *See, e.g.*, *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352 (11th Cir. 2016) ("The second amended complaint fails because it has not plausibly alleged that the technology [] and public relations [] vendors named in the complaint shared a common purpose with Spirit."); *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits*

9

*Fund v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013) (holding that "a commercial relationship" is insufficient to show that parties associated in fact); *Ellis v. JPMorgan Chase & Co.*, 752 F. App'x 380, 382 (9th Cir. 2018) (affirming dismissal of RICO claims, holding that the "mere existence of service contracts . . . is insufficient to establish a common purpose"); *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 2:11-CV-07166-MRP, 2012 WL 10731957, at *9 (C.D. Cal. June 29, 2012) (dismissing RICO claims where the plaintiffs "identified exactly the type of arms-length business transaction, with each party pursuing its own economic interests, that does not constitute a RICO enterprise"); *Peters v. Aetna, Inc.*, 1:15-CV-00109-MR, 2016 WL 4547151, at *9 (W.D.N.C. Aug. 31, 2016).

"Participation" also requires some "overt act" in furtherance of the venture; nonfeasance (i.e., the alleged failure to prevent trafficking) is not sufficient. *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) (holding that "participating in a venture" requires "some overt act," and that "mere negative acquiescence" is not enough); *accord Ratha v. Phatthana Seafood Co., Ltd.*, CV 16-4271-JFW (ASX), 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017). "In other words, some participation in the sex trafficking act itself must be shown." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). Indeed, a defendant's lawful association with someone who commits sex-trafficking crimes is insufficient to show that the defendant itself "participated" in a sex-trafficking venture. *See, e.g.*, *Doe 1*, 2020 WL 1872335, at *3 (holding that "mere association alone cannot establish liability" under the TVPRA). Construing the phrase "participation in a venture" otherwise would "create a vehicle to ensnare conduct that the statute never contemplated." *Afyare*, 632 F. App'x at 286.

The Complaint alleges in conclusory fashion that Defendants "participated in a venture with . . . Jane Doe's traffickers," arguing that these so-called "venturers shared a common purpose—the rental of hotel rooms." Dkt. 25, at ¶ 117. There are several problems with this argument. For instance, it is not clear from the Complaint whether Plaintiff is arguing that there were multiple traffickers, or only one. *Compare* Dkt. 25, at ¶¶ 77-84, *with* ¶¶ 117-118. Moreover, the Complaint contains no indication of how long Plaintiff was allegedly trafficked on the premises of the Facility. And, more fundamentally, lawful commercial transactions (such as the rental of hotel rooms) cannot support an inference of a common purpose among the participants in those transactions. *See, e.g.*, *Ray*, 836 F.3d at 1352; *United Food*, 719 F.3d at 855; *Ellis*, 752 F. App'x at 382. At most, the Complaint suggests the Facility may have been used as an instrumentality for the alleged trafficker's activities, which is insufficient to establish that Defendants "associated in fact" with Plaintiff's alleged trafficker(s). *See Weir v. Cenlar FSB*, 16-CV-8650 (CS), 2018 WL 3443173, at *6 (S.D.N.Y. July 17, 2018) (holding that "being an 'instrumentality' does not thereby mean one shares a common purpose" and positing that a defendant's use of the mail in furtherance of the scheme "would not make the Postal Service [] a member of the enterprise"); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428-29 (S.D.N.Y. 2007) ("The only factual allegation supporting this claim is that BoC provided 'indispensable banking services' to IFS and Siu Lap. The fact that BoC provided general professional services to IFS and Siu Lap, services that BoC provides to the public at large, does not provide a basis for inferring that BoC, IFS, and Siu Lap shared a common unlawful purpose.").

Moreover, Defendants' alleged failure to prevent Plaintiff's trafficking is insufficient to establish "participation" in a "venture" under the TVPRA. *See Afyare*, 632 F. App'x at 286; *Noble*,

335 F. Supp. 3d at 524. Lacking well-pled factual allegations that could plausibly suggest that any of the Defendants "associated in fact" with Plaintiff's alleged trafficker(s), the Complaint should be dismissed. *Compare Bistline,* 918 F.3d at 874-75 (finding allegations sufficient to state a claim under the TVPRA where defendants "set up" a "scheme" that "was designed expressly ***for the purpose*** of facilitating [] crimes . . . ." (emphasis added)); *Ricchio,* 853 F.3d at 556 (finding allegations sufficient to state a claim against hotel operators under the TVPRA where they rented hotel rooms to a trafficker "for the purpose" of trafficking the plaintiff).

### 3. The Complaint lacks well-plead allegations that Defendants benefited, knowingly or otherwise, from Plaintiff's alleged trafficking.

A civil claim under Section 1595 not only requires "participation in a venture" that committed sex trafficking crimes, but also that the defendant knowingly benefited from such participation. 18 U.S.C. § 1595(a). This provision requires "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit," with knowledge of that causal relationship. *See Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). In other words, the "benefit" must derive directly from, and be knowingly received in exchange for, participating in the venture committing sex-trafficking crimes. *See, e.g.*, *Kolbek v. Twenty First Cent. Holiness Tabernacle Church, Inc.*, No. 10 Civ. 4124, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013) ("The fact that sexual abuse was committed by the ministry's leader and that members of the ministry had their expenses paid for through ministry funds is simply not sufficient . . . .").

In this case, the Complaint alleges that the Facility received "hotel rental fees." *See* Dkt. 25, at ¶ 120. That is insufficient. As alleged in the Complaint, the Facility benefited, if at all,

from the rental of hotel rooms generally—not from Plaintiff's trafficking. Moreover, where, as here, there are no well-pled allegations that the defendant participated in a sex-trafficking venture, a defendant could not have knowingly benefited "from" participating in that venture. Because the Complaint lacks well-pled allegations that Defendants benefited from participating in a sex-trafficking venture (let alone knowingly benefited), the Complaint fails to state a TVPRA claim and therefore should be dismissed.

### 4. The Complaint does not include plausible allegations that Defendants knew or should have known about Plaintiff's trafficking.

In addition, to state a claim under the TVPRA, a plaintiff must make well-pled factual allegations plausibly suggesting that the defendant knew or should have known that the venture in which the defendant participated was forcing or coercing the plaintiff into committing commercial sex acts against the plaintiff's will. 18 U.S.C. §§ 1591(a), 1591(e)(2)-(3), 1595(a). Allegations that a defendant knew or should have known about commercial sex activity, absent force or coercion, are insufficient. *See, e.g.*, *Doe 1*, 2020 WL 1872335, at *3 ("[T]he statute targets commercial sex activity that is forced or coerced; it does not address commercial sex activity generally.").

The Complaint alleges in conclusory fashion that employees "knew or should have known" of Plaintiff's trafficking. *See* Dkt. 25, at ¶ 103. From there, the Complaint speculates "on information and belief" that signs of human trafficking may have been present at the Facility, but stops short of alleging that anyone at the Facility actually witnessed any of these alleged indicators of trafficking. *See* Dkt. 25, at ¶ 104. Boilerplate, speculative allegations like these are insufficient to support a TVPRA claim. *See, e.g.*, *Kelsey*, 2014 WL 1155253, at *6.

13

Insofar as the Complaint implies that Defendants "should have known" about Plaintiff's alleged trafficking because the hospitality industry generally is aware that commercial sex activity sometimes occurs at hotels, *see* Dkt. 25, at ¶¶ 28-50, such allegations also are insufficient. *See, e.g.*, *Doe 1*, 2020 WL 1872335, at *1 (striking allegations from complaint concerning general knowledge about sex trafficking in the hotel industry generally); *Ratha*, 2017 WL 8293174, at *4 ("Plaintiffs argue that Rubicon and Wales knew or should have known that Phatthana allegedly engaged in [trafficking] based on general reports about human trafficking in Thailand and letters by advocacy groups . . . criticizing the working conditions at Phatthana's Songkhla factory. . . . Plaintiffs have failed to demonstrate that Rubicon or Wales knew or should have known that human trafficking existed at Phatthana's Songkhla factory.").

The Complaint also alleges in passing that "La Quinta turned a blind eye" to trafficking. *See* Dkt. 25, at ¶ 85. This conclusory allegation is insufficient to suggest that any of the Defendants were "willfully blind" to Plaintiff's alleged trafficking. To allege willful blindness, the Complaint would need to allege facts supporting a plausible inference that each Defendant: (i) subjectively believed there was a high probability that Plaintiff was being trafficked; and (ii) took deliberate steps to avoid confirming that Plaintiff was being trafficked. *See, e.g.*, *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) (holding that "willful blindness" has "two basic requirements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact"). The Complaint is void of any such allegations.

There simply are no well-pled factual allegations that could support a plausible inference that Defendants knew or should have known that any alleged trafficker(s) had caused Plaintiff

through force, fraud, or coercion to engage in commercial sex acts against her will. *See, e.g.*, *Lawson v. Rubin*, 17-CV-6404 (BMC), 2018 WL 2012869, at *14 (E.D.N.Y. Apr. 29, 2018), *reconsideration denied*, 2018 WL 7958928 (E.D.N.Y. June 11, 2018) (dismissing TVPRA claim against owner of condominium complex, reasoning that two incidents involving first responders were insufficient to give rise to a reasonable inference that the owner knew or should have known that the occupant of the penthouse was committing trafficking crimes). The Complaint therefore fails to state a claim under the TVPRA.

      C.    **Immaterial Allegations Should Be Stricken From The Complaint.**

Large portions of the Complaint are immaterial to the elements of a TVPRA claim. For example, Paragraphs 28-50 relate to the hospitality industry generally—not to any of the Defendants specifically. Moreover, Paragraphs 105-109 make inflammatory and gratuitous allegations concerning hotels not at issue in this lawsuit. Defendants request that the Court strike these immaterial allegations from the Complaint. *See Doe 1*, 2020 WL 1872335, at *1 ("[T]he Court strikes Plaintiff's allegations from the Amended Complaint concerning sex trafficking and the relationship between sex trafficking and the hotel industry generally, and the Court orders the Plaintiff to . . . remov[e] all general allegations about sex trafficking . . . that are not related to a specific Defendant . . . .").

**V.    CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court GRANT this motion and dismiss the Second Amended Complaint with prejudice, or, in the alternative, to strike Paragraphs 28-50 and 105-109 from the Second Amended Complaint.

Dated: May 4, 2020                            Respectfully submitted,

**DLA PIPER LLP (US)**

By:   <u>/s/ *Allissa A.R. Pollard*</u>
      Allissa A.R. Pollard
      *Attorney-in-Charge*
      S.D. Tex. Bar No.: 982820
      Tex. Bar No.: 24065915
      1000 Louisiana Street, Suite 2800
      Houston, Texas 77002
      T: 713.425.8400
      F: 713.425.8401
      alllissa.pollard@dlapiper.com

*Of Counsel*:

David S. Sager, *pro hac vice*
51 John F. Kennedy Pkwy, Suite 120
Short Hills, New Jersey 07078
T: 973.520.2570
F: 973.215.2604
david.sager@dlapiper.com

– and –

Christopher B. Donovan
S.D. Tex. Bar No.: 3120082
Tex. Bar No.: 24097614
1000 Louisiana Street, Suite 2800
Houston, Texas 77002
T: 713.425.8400
F: 713.425.8401
christopher.b.donovan@dlapiper.com

***Counsel for Defendants Wyndham Hotels & Resorts, Inc., La Quinta Holdings Inc., and CPLG TX Properties L.L.C.***

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of May 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notice of such filing to all attorneys of record.

>                 /s/ *Christopher B. Donovan*
>                 Christopher B. Donovan
>                 S.D. Tex. Bar No.: 3120082
>                 Tex. Bar No.: 24097614